UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,   } | |
| } | |
| } | |
| } | |
| v.                          } | |
| }                            | Case No.: 2:07-cr-394-MHH-JHE-1 |
| }                            | |
| LARRY CHARLES WELCH,         } | |
| }                            | |
| }                            | |

**MEMORANDUM OPINION ON MOTION FOR AMENDED
JUDGMENT PURSUANT TO THE FIRST STEP ACT OF 2018**

Larry Charles Welch has asked the Court to amend the judgment in this case pursuant to the Fair Sentencing Act of 2010 and the First Step Act of 2018.  As the Court discusses below, the Fair Sentencing Act of 2010 lowered the federal mandatory minimum sentences for crack cocaine offenses, and the First Step Act made those reduced mandatory minimum sentences retroactive.  A component of Mr. Welch's 420-month sentence in this case is a 240-month sentence for a crack cocaine offense.  Mr. Welch contends that the First Step Act allows the Court to exercise its discretion to reduce the length of his total sentence from 420 months to 240 months.  The Government acknowledges that Mr. Welch is eligible for a

1

sentence reduction under the First Step Act but argues that the Court should not amend his sentence.

The opinion that follows is in three parts. To provide context for its analysis of Mr. Welch's motion, the Court first describes the conduct that prompted Mr. Welch's arrest, the charges that the United States brought against him because of that conduct, and the trial and post-trial procedures that preceded Mr. Welch's motion for relief under the First Step Act. The Court then summarizes the law that governs Mr. Welch's motion. Finally, the Court applies the law relating to Mr. Welch's motion to the record in this case.

## I.

On April 18, 2007, Birmingham police officers responded to a call concerning a black male beating another black male. (Doc. 37, p. 5). The caller stated that the suspect was wearing gold pants and a black t-shirt and was carrying a rifle. (Doc. 37, p. 5). When they arrived in the area where the fight purportedly took place, officers found Mr. Welch walking in a parking lot, wearing gold pants, and carrying a denim backpack and a rifle. (Doc. 37, p. 5). Seeing the officers, Mr. Welch ran through an apartment building and lost the officers who gave chase. (Doc. 37, p. 5). In an abandoned apartment, the officers discovered a loaded Hi Point 9-millimeter rifle in a bedroom and a denim backpack in the living room. (Doc. 37, p. 5). The backpack contained a large freezer bag of marijuana, two small plastic baggies of

crack cocaine, and other narcotics and drug paraphernalia. (Doc. 37, p. 6). A police officer apprehended Mr. Welch later that day. (Doc. 37, p. 6).

A few months after Mr. Welch was arrested, a grand jury returned a three-count federal indictment against him, charging him with one drug offense and two gun-related offenses. (Doc. 1). In December 2007, a jury found Mr. Welch guilty of possession with intent to distribute fifty grams or more of a mixture and substance of cocaine base and an amount of marijuana in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A), and (b)(1)(D) (Count 1); carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A) (Count 2); and being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count 3). (Docs. 30-32).

Before trial, the Government filed a 21 U.S.C. § 851 information in which the Government identified a 1990 conviction of Mr. Welch for possession of a controlled substance and argued that the prior conviction warranted an increase in Mr. Welch's guideline calculation if a jury convicted him of the conduct alleged in the indictment. (Docs. 8). Mr. Welch also faced an enhanced penalty under Count 3 because Mr. Welch's criminal history included several first-degree robbery convictions that rendered him a career offender under the federal sentencing guidelines. (Doc. 37, p. 8).

When this Court sentenced Mr. Welch, the mandatory minimum sentence under Count 1 with the § 851 enhancement was 20 years, and the mandatory minimum sentence under Count 3 was 15 years. The maximum sentence under both counts was life in prison. (Doc. 37, p. 2). In the presentence report (PSR) that it prepared for Mr. Welch's sentencing hearing, the United States Probation Office, to determine Mr. Welch's offense level, grouped Counts 1 and 3 and used the base offense level under Count 1 because it was the higher of the base levels under the two counts. Under U.S.S.G § 2D1.1(c)(4), Mr. Welch's base offense level for Count 1 was a 32. (Doc. 37, p. 7).[1] To avoid double counting, the Probation Office did not adjust the base offense level to account for the firearm, so Mr. Welch's total offense level was a 32. (Doc. 37, pp. 7-8). As noted, Mr. Welch's prior state court convictions for robbery triggered the career offender guideline at U.S.S.G § 4B1.1, so the Probation Office enhanced Mr. Welch's offense level to 37. (Doc. 37, p. 8). The career offender designation also produced a criminal history category of VI, two levels higher than the criminal history category of IV that would have applied in the absence of the designation. (Doc. 37, p. 16). Consequently, because he was designated a career offender, pursuant to U.S.S.G. § 4B1.1(c)(2), Mr. Welch's

---

[1] The federal sentencing guideline for the base offense level for the drug offense in Count 1 rests on the quantity of illegal drugs that Mr. Welch possessed at the time of his arrest. Because Mr. Welch's conviction involved crack cocaine and marijuana, the Probation Office converted the crack quantity to its equivalent weight in marijuana and determined that Mr. Welch possessed with intent to distribute the equivalent of 1,739.56 kilograms of marijuana. (Doc. 37, p. 7).

4

guideline range of imprisonment for Counts 1 and 3 was 420 months to life, and the consecutive guideline range for Count 2 was 60 months. (Doc. 37, pp. 8, 21).

In April of 2008, the Court sentenced Mr. Welch to the mandatory minimum of 240 months of imprisonment on Count 1 and the mandatory minimum of 180 months of imprisonment on Count 3. The Court ordered that 60 months of Count 3 run concurrent with Count 1 and 120 months run consecutive to Count 1, producing, with the mandatory consecutive 60-month sentence for Count 2, a total sentence of 420 months. (Doc. 39, p. 2). By running 60 months of the sentence on Count 3 concurrent with the sentence for Count 1, the sentencing judge effectively varied downward 60 months from the 480-month sentence that would have applied had the judge imposed the bottom of the guideline range for Counts 1 and 3 (420 months) and the mandatory 60-month consecutive sentence on Count 2. The Court imposed a 120-month period of supervised release with a special condition for drug treatment. (Doc. 39, p. 3).[2]

Mr. Welch challenged his sentence in the Eleventh Circuit Court of Appeals. (Doc. 40). After losing on appeal, Mr. Welch appealed to the United States Supreme Court, and the Supreme Court denied his petition for writ of certiorari. (Docs. 53, 54). Then, Mr. Welch filed a motion under 28 U.S.C. § 2255 in this Court to challenge his sentence. (November 23, 2010 docket entry). The Court denied Mr.

---

[2] The Honorable James H. Hancock sentenced Mr. Welch. (Doc. 39).

Welch's § 2255 petition. (Docs. 58, 58-1). Mr. Welch received permission from the Eleventh Circuit Court of Appeals to file another § 2255 motion concerning the application in his case of the Supreme Court's decision in *Johnson v. United States*, 576 U.S. 591 (2015). (Docs. 59). In his second § 2255 motion, Mr. Welch argued that under *Johnson v. United States*, 576 U.S. 591 (2015), and *Welch v. United States*, 136 S.Ct. 1257 (2016), his state court robbery convictions were not crimes of violence under the Armed Career Criminal Act. (Doc. 61). The Court held that Mr. Welch is not entitled to relief under *Johnson* and denied Mr. Welch's second § 2255 motion. (Doc. 80).[3]

That brings us to Mr. Welch's motion for an amended judgment pursuant to the Fair Sentencing Act of 2010 and the First Step Act of 2018. (Doc. 69). Mr. Welch has supplemented his motion twice (Docs. 70, 72), and the United States has filed a brief in opposition to Mr. Welch's motion, (Doc. 76).

## II.

In 2010, two years after Mr. Welch was sentenced in this case, Congress adopted the Fair Sentencing Act. The Act aligned the minimum penalties for crack cocaine with the minimum penalties for powder cocaine to eliminate disparities that

---

[3] In its opinion denying Mr. Welch's second § 2255 motion, the Court explained that the crime of robbery under Alabama law satisfies the elements clause of the Armed Career Criminal Act. (Doc. 80, p. 2). The discussion is largely moot because Mr. Welch was sentenced as a career offender rather than as an armed career criminal. (Doc. 37, p. 8).

6

generally produced significantly harsher sentences for African-American defendants who were found guilty of crimes involving the possession and distribution of cocaine. *See* Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 (2010); *also see Dorsey v. United States*, 567 U.S. 260, 263-264 (2012). To reduce the sentencing disparity between powder and crack cocaine offenses, Congress increased the quantity of crack cocaine necessary to trigger the mandatory minimum sentences in 28 U.S.C. § 841 (b)(1)(A)(iii) and (B)(iii). Relevant to Mr. Welch's conviction, in Section 2 of the Fair Sentencing Act, Congress increased from 5 to 28 grams the threshold trafficking quantity of crack cocaine required to trigger a five-year mandatory minimum sentence, 21 U.S.C. § 841 (b)(1)(B)(iii), and Congress increased from 50 to 280 grams the quantity of crack cocaine required to trigger a ten-year mandatory minimum sentence, 21 U.S.C. § 841(b)(1)(A)(iii). Section 3 of the Act eliminated the five-year mandatory minimum sentence for simple possession of crack cocaine.

Initially, the modified penalties in the Fair Sentencing Act applied only to defendants who were sentenced on or after the Act's effective date of August 3, 2010. *Dorsey*, 567 U.S. at 264. In 2018, with its adoption of the First Step Act, Congress made the provisions of the Fair Sentencing Act retroactive. *United States v. Jones*, 962 F.3d 1290, 1297 (11th Cir. 2020). "Specifically, § 404 of the First Step Act 'permits a district court that imposed a sentence for a covered offense' to

'impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act . . . were in effect at the time the covered offense was committed.'" *United States v. Bullock*, --- Fed. Appx. --- 2020 WL 4436267, *2 (11th Cir. Aug. 3, 2020) (quoting *Jones*, 962 F.3d at 1297, in turn quoting the First Step Act § 404(b)). Thus, the First Step Act triggers 18 U.S.C. § 3582(c)(1)(B) which authorizes a district court to "modify an imposed term of imprisonment" where "expressly permitted by statute." *See United States v. Puentes*, 803 F.3d 597, 606 (11th Cir. 2015) (explaining that a district court may modify a sentence only when a statute or rule authorizes the modification); *Jones*, 962 F.3d at 1297 ("When Congress enacted the First Step Act of 2018, it granted district courts discretion to reduce the sentences of crack-cocaine offenders in accordance with the amended penalties in the Fair Sentencing Act.").

To qualify for a sentence modification under the Fair Sentencing Act and the First Step Act, a defendant must have been sentenced for a covered offense that the defendant committed before August 3, 2010. *Jones*, 962 F.3d at 1297. A movant's offense is a covered offense if the offense "triggered the higher penalties in section 841(b)(1)(A)(iii) or (B)(iii)." *Jones*, 962 F.3d at 1301. Even if a movant qualifies for a sentence reduction, a district court may not modify a sentence if the movant "received the lowest statutory penalty that also would be available to him under the Fair Sentencing Act," or if "the movant's sentence would have necessarily remained the same had the Fair Sentencing Act been in effect." *Jones*, 962 F.3d at 1303. In

addition, a district court may not modify a sentence if the court previously denied a request for an amended sentence under § 404(b) after a complete review of the motion on the merits. *Jones*, 962 F.3d at 1297-1298.

### III.

Here, Mr. Welch was indicted for the offense of possession with intent to distribute 50 grams or more of crack cocaine, (Doc. 1, p. 1; Doc. 37, p. 2), a jury convicted him of that specific offense in 2007, (Doc. 30), and this Court sentenced Mr. Welch for that specific offense in 2008, (Doc. 39, p. 1). When the Court sentenced Mr. Welch for the crack cocaine offense, the statutory range of sentence was 10 years to life, 21 U.S.C. § 841(b)(1)(B)(iii) (1994), and the mandatory minimum sentence for Mr. Welch became 20 years with the application of the § 851 enhancement. The Fair Sentencing Act, applied retroactively through the First Step Act, provides a sentencing range of 5 to 40 years for an offense involving between 28 and 279 grams of crack cocaine, 18 U.S.C. § 841 (b)(1)(B)(iii) (2012), and the that sentencing range becomes ten years to life with the application the § 851 enhancement. "Because the Fair Sentencing Act modified the statutory penalties for [Mr. Welch's] offense," which was an offense involving 50 grams or more of crack cocaine, he has a covered offense, and he qualifies for a sentence modification under the First Step Act and the Fair Sentencing Act. *Jones*, 962 F.3d at 1303.

9

Nothing in the record precludes Mr. Welch from receiving a sentence modification under § 404(c). Although Mr. Welch has challenged his sentence twice before in this Court, he has not done so based on the Fair Sentencing Act and the First Step Act, so his previous motions for a sentence reduction do not preclude his current motion. The sentencing judge imposed a sentence of 240 months on Count 1, Mr. Welch's crack cocaine offense, so Mr. Welch did not receive for his crack cocaine offense the lowest statutory penalty of 120 months that is available to him under sections 2 and 3 of the Fair Sentencing Act. And, for the reasons stated below, Mr. Welch's sentence would not have "necessarily remained the same" in 2008 "had the Fair Sentencing Act been in effect," because the district court may have varied lower if the mandatory minimum for Count 1 had been 120 months rather than 240 months, given that the district court applied the mandatory minimums for Counts 1 and 3 and accomplished a downward variance by running part of the sentence on Count 3 concurrent with the sentence on Count 1. In addition, the supervised release period would have been 8 years rather than 10 years. (Exhibit A, Addendum to PSR).

Because Mr. Welch was sentenced on Count 1 for a covered offense that was committed before August 3, 2010 and because none of the exceptions to a sentence modification apply here, the Court may resentence Mr. Welch. In considering the appropriate sentence under Count 1, the Court begins with the sentencing guideline

10

range for Mr. Welch's offense.  Under the U.S.S.G. § 4B1.1(b) his imprisonment guideline range remains 420 months to life, but, as noted, his period of supervised release drops from 10 years to 8 years. (Exhibit A).[4]

Mr. Welch concedes that his guideline imprisonment sentencing range under U.S.S.G. § 4B1.1(b), the career-offender guideline, is unchanged despite the revision to the statutory range of sentence for Count 1.  (Doc. 81, p.1).  But Mr. Welch's career offender status does not make him ineligible for a sentence modification.  And it is well-settled that a guideline range is advisory only, and a district court does not have to sentence within a guideline range.  *United States v. Booker,* 543 U.S. 220, 331-334 (2005); *Jones*, 962 F.3d at 1305.  When a district court evaluates a motion for a sentence modification pursuant to the Fair Sentencing Act and the First Step Act, the court may consider whether a downward variance is appropriate using the sentencing factors found at 18 U.S.C. § 3553(a) and other relevant factors.  *Jones*, 962 F.3d at 1304 ("District courts have wide latitude to determine whether and how

---

[4] The 420-month to life guideline range is a product of the § 851 enhancement based on Mr. Welch's 1990 simple-possession conviction to increase his statutory penalty to 10 years to life. (Doc. 8, p. 2).  Section 401 of the Fair Sentencing Act, which Congress did not make retroactive under the First Step Act, eliminated from the predicate offenses for § 851 enhancements simple possession offenses.  First Step Act of 2018, Pub. L. No. 115-391 § 401, 132 Stat. 341.  Therefore, if Mr. Welch's initial sentencing hearing were to take place today, the top of his statutory penalty range for Count 1 would be 40 years, not life, and would produce an offense level of 34 which would, in turn, in combination with a criminal history of VI, produce a guideline range of 262 to 327 months for Counts 1 and 3. U.S.S.G. § 4B1.1(b); *United States v. Denson*, 963 F.3d 1080, 1083 (11th Cir. 2020).

11

to exercise their discretion in this context. In exercising their discretion, they may consider all the relevant factors, including the statutory sentencing factors, 18 U.S.C. § 3553(a)."). Under the First Step Act, the Court may modify Mr. Welch's sentence only for Count 1 because only Count 1 concerns a covered offense.[5]

The Court begins by recognizing that the sentencing judge sentenced Mr. Welch at the low end of the statutory range for Count 1. The sentencing judge likely believed that Mr. Welch's overall guideline range, which was driven by Count 1, was excessive because, by running part of the sentence for Count 3 concurrent with the 240-month sentence on the crack cocaine offense in Count 1, the Court effectively reduced Mr. Welch's overall 480-month sentence (bottom of the guideline range on Counts 1 and 3 with the mandatory 60-month consecutive sentence for Count 2) by 60 months. The Court is not bound to mimic the rationale that the sentencing judge used when he sentenced Mr. Welch, but the Court,

---

[5] "[T]he First Step Act does not authorize the district court to conduct a plenary or de novo resentencing." *United States v. Denson*, 963 F.3d 1080, 1089 (11th Cir. 2020). "[I]n ruling on a defendant's First Step Act motion, the district court (1) is permitted to reduce a defendant's sentence only on a 'covered offense' and only 'as if' sections 2 and 3 of the Fair Sentencing Act were in effect when he committed the covered offense, and (2) is not free to change the defendant's original guidelines calculations that are unaffected by sections 2 and 3, to reduce the defendant's sentence on the covered offense based on changes in the law beyond those mandated by sections 2 and 3, or to change the defendant's sentences on counts that are not 'covered offenses.'" 963 F.3d at 1089 (citing First Step Act § 404(b) and *United States v. Hegwood*, 934 F.3d 414, 418 (5th Cir. 2019)).

exercising its discretion, considers the apparent rationale for Mr. Welch's initial sentence.

Applying the sentencing factors at 18 U.S.C. § 3553(a), the Court recognizes that Mr. Welch had minimal parental guidance as a child and began using drugs and alcohol at an early age.  Mr. Welch's mother died when he was two, and he did not have a close relationship with his father.  (Doc 37, p. 18).  Mr. Welch's maternal grandmother raised him, but she died when he was 19 years old.  (Doc, 37, p. 19).  Mr. Welch reportedly first tried drugs at the age of 12 and began drinking alcohol at the age of 14.  He suffered from severe substance abuse until his incarceration in this case at age 51.  (Doc. 37, pp. 2, 19-20).  Since his incarceration, Mr. Welch maintains his innocence but believes his imprisonment has been a blessing because he now is clean and sober.  (Doc. 71).

Mr. Welch has served 162 months in custody, and he is 64 years old.  His BOP records reflect that he has "maintained clear conduct since his arrival" and that he earned his GED in 2008.  (Doc. 70-1, pp. 2-3).  According to Mr. Welch's unit manager, since his (Mr. Welch's) arrival in 2008, Mr. Welch has completed a significant amount of positive programming, such as courses in drug treatment, victim impact, and vocational training.  (Doc. 71).  Mr. Welch's unit manager states that, "[a] review of this period of incarceration indicates a positive change in the mindset and attitude of inmate Welch.  Furthermore, based on my professional

13

dealings with Mr. Welch over the years, his level of maturity and the knowledge, skills, and abilities he gained while incarcerated will serve him well, enabling him to be a positive role model for others, and make positive contributions to society." (Doc. 71). The foreman at Mr. Welch's work assignment said of Mr. Welch: "He has repeatedly demonstrated a work ethic that is commendable and noteworthy. He has always held himself to a high standard, and frequently volunteered for additional duties as our mission required. Mr. Welch approaches his tasks with a can-do attitude, and is always prepared to go above and beyond to achieve the factory's goals." (Doc. 70-1, p. 3).

Mr. Welch has maintained family relationships over the past 13 years of custody. Mr. Welch has never married, but he has two adult daughters. (Doc. 37, p. 19). One of his daughters writes that he is well-loved, and she wants him to come home, so that he can meet his great-grandchildren. (Doc. 71). Three of his grandchildren write that Mr. Welch played an important role in their lives when they were small children. (Doc. 71).

Balanced against these positive characteristics are Mr. Welch's criminal history, which includes several robberies, one of which was an armed robbery. (Doc. 37, pp. 9-12), and the crime for which Mr. Welch was convicted, a crime which involved drugs and guns, a dangerous combination. These factors support the decade that Mr. Welch has spent in custody. But Mr. Welch committed burglaries

14

as a drug addict between the ages of 18 and 23, and he committed the drug crime for which he was convicted when he was 50 years old and still addicted to drugs. If he can maintain the sobriety that he has achieved over the past decade in custody, he is not likely to revert to criminal behavior. Mr. Welch's struggles as a child easily explain his drug and alcohol use, and his opportunity now to enjoy a life with the support of his family suggests that he is well-positioned to be successful when he is released from custody. The § 3553(a) factors indicate that Mr. Welch has been punished enough, and Congress has instructed that "imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a). Therefore, the Court concludes that Mr. Welch's continued imprisonment is not permissible under § 3582(a) and is not necessary under § 3553(a).

**CONCLUSION**

Because the *Denson* opinion states that the Court may change only Mr. Welch's sentence on Count 1, the Court must reimpose the 180-month sentence for Count 3 and the mandatory consecutive 60-month sentence for Count 2. The Court sentences Mr. Welch to 120 months of custody for Count 1 and runs the sentence for Count 1 concurrent with the sentence for Count 3, for a total of 240 months on Counts 1, 2, and 3 with 8 years of supervised release with the standard and special conditions identified in Exhibit A. The Court varies downward because the guideline imprisonment range of 420 months plus 60 months is unnecessary to meet

15

the objectives of sentencing. A sentence of 240 months of imprisonment is sufficient and adequately reflects the seriousness of the offense, promotes respect for the law, provides just punishment for the offense, affords adequate deterrence to criminal conduct, and protects the public from further crimes of Mr. Welch. *See* U.S.C. § 3553(a)(2) and (a)(3)-(4). With a projected released date, of February 13, 2024, Mr. Welch will be 68 upon release and will have adequate time to develop a release plan.

The Court will enter an amended judgment consistent with this opinion.

**DONE** and **ORDERED** this October 30, 2020.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE